# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Valle del Sol, *et al*.,

       Petitioners,

   v.

Kris W. Kobach,

       Respondent.

Miscellaneous Case No.

[Case No. 10-cv-01061-PHX_SRB, *Valle del Sol*, *et al*., *v. Whiting*, *et al*.,  pending in the United States District Court for the District of Arizona]

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
## COMPLIANCE WITH SUBPOENA *DUCES TECUM*

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

# TABLE OF CONTENTS

BACKGROUND AND PROCEDURAL HISTORY ……………………………2

STANDARD ………………………………………………………………… 5

ARGUMENT ……………………………………………………………... 6

I.     MR. KOBACH'S PRIVILEGE CLAIM IS FORECLOSED BY
THE LAW OF THE CASE IN THE UNDERLYING LITIGATION …   7

II.    MR. KOBACH HAS NOT AND CANNOT ESTABLISH THE
APPLICABILITY OF THE ATTORNEY-CLIENT PRIVILEGE ……   11

A. Mr. Kobach has failed to present evidence that he ever formed
an attorney-client relationship with Senator Pearce ………………  12

B. The record evidence demonstrates that the challenged
communications were not the kind of "legal advice" covered
by the privilege ………………………………………….............  13

C. The record illustrates that the communications were never
intended to be kept confidential …………………………………  16

D. Even if the attorney-client privilege ever applied to any of the
subpoenaed records, the privilege has been destroyed …………….  18

III.   THE SUBPOENAS SEEK RELEVANT INFORMATION AND ARE
NOT UNDULY BURDENSOME …………………………………......   20

A. Legislative intent is at issue in several remaining claims and any
defenses to them ……………………………………………………  20

B. The subpoenaed documents are directly relevant to legislative intent in
enacting S.B. 1070. The subpoenaed documents are directly relevant to
legislative intent in enacting S.B. 1070 ………………………………… 21

C. The subpoenas are not overly broad …………………………………… 22

CONCLUSION ……………………………………………………………… 23

## TABLE OF AUTHORITIES

<u>Cases</u>

*Arizona v. United States*,
    567 U.S. ___,132 S. Ct. 2492 (2012) ................................................................ 15, 22

*Baldus v. Brennan*,
    2011 WL 6385645 (E.D. Wis. Dec. 20, 2011) ........................................................ 14

*Black & Veatch Corp. v. Aspen Ins. Ltd.*,
    2014 WL 806144 (D. Kan. Feb. 28, 2014) ............................................................. 12

*cf. United States v. Ary*,
    No. 05–10053–01–JTM, 2005 WL 2367541 (D. Kan. Sept. 27, 2005) .................. 17

*cf. United States v. Ruedlinger*,
    No. 96–40045–SAC, 1997 WL 161960 (D. Kan. Mar. 7, 1997) ............................ 19

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ............................................................................................ 8, 10

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
    583 F.3d 690 (9th Cir. 2009) ................................................................................... 21

*Cotracom Commodity Trading Co. v. Seaboard Corp.*,
    189 F.R.D. 456 (D. Kan. 1999) ................................................................................ 6

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*,
    448 F.3d 918 (6th Cir. 2006) ................................................................................... 11

*Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*,
    502 F.3d 78 (2d Cir. 2007) ..................................................................................... 11

*Evans v. City of Chicago*,
    231 F.R.D. 302 (N.D. Ill. 2005) .............................................................................. 14

*Fisher v. United States*,
    425 U.S. 391 (1976) ................................................................................................ 12

*General Elec. Co. v. Johnson*,
    2006 WL 2616187 (D.D.C. 2006) .......................................................................... 14

*Gomez v. Vernon*,
    255 F.3d 1118 (9th Cir. 2001) ................................................................ 18

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (N.D. Cal. 2006) ............................................................. 5

*Goodman v. United States*,
    369 F.2d 166 (9th Cir. 1966) .................................................................. 6

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto*
    *Servicenter of Haverstraw, Inc.*,
    211 F.R.D. 658 (D. Kan. 2003) .............................................................5-6

*Hunter v. Underwood*,
    471 U.S. 222 (1985) ............................................................................. 20

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ................................................................ 11

*In re County of Erie*,
    473 F.3d 413 (2d Cir. 2007) ...............................................................13-16

*In re Grand Jury Proceedings*,
    616 F. 3d 1172 (10th Cir. 2010) .........................................................16-17

*In re Grand Jury Subpoenas*,
    144 F.3d 653 (10th Cir. 1998) ................................................................ 6

*In Re Lindsey*,
    148 F.3d 1100 (D.C. Cir. 1998) ................................................... 3, 13, 16

*In re Qwest Comms. Intern. Inc.*,
    450 F.3d 1179 (10th Cir. 2006) ............................................................. 18

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    232 F.R.D. 669 (D. Kan. 2005) ............................................................. 13

*Kear v. Kohl's Dept. Stores, Inc.*,
    2013 WL 3581671 (D. Kan. July 12, 2013) ............................................ 6

*Lewin v. Nackard Bottling Co.*,
    No. CV 10–8041–PCT–FJM, 2010 WL 4607402 (D. Ariz. Nov. 4, 2010) .............. 5

*Mcllravy v. Kerr-McGee Coal Corp.,*
 204 F.3d 1031 (10th Cir. 2000) ............................................................... 10

*Melendres v. Arpaio,*
 ___ F. Supp. 2d ___, 2013 WL 2297173 (D. Ariz. 2013)........................ 15

*Metzler Contracting Co. LLC v. Stephens,*
 642 F. Supp. 2d 1192 (D. Haw. 2009) .................................................... 13

*Motley v. Marathon Oil Co.,*
 71 F.3d 1547 (10th Cir. 1995) ................................................................... 6

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,*
 254 F.R.D. 568 (N.D. Cal. 2008) ............................................................ 18

*Pouncil v. Branch Law Firm,*
 277 F.R.D. 642 (D. Kan. 2011) ......................................................... 11, 17

*Scott v. City of St. Louis,*
 196 F.R.D. 551 (E.D. Mo. 2000)........................................................14-15

*Smith v. Town of Clarkton,*
 682 F.2d 1055 (4th Cir. 1982) ................................................................. 20

*Sonnino v. Univ. of Kan. Hosp. Auth.,*
 221 F.R.D. 661 (D. Kan. 2004) .............................................................. 6-7

*Stanford v. Roche,*
 237 F.R.D. 618 (N.D. Cal. 2006) ............................................................ 19

*Swackhammer v. Sprint Corp. PCS,*
 225 F.R.D. 658 (D. Kan. 2004) ................................................................. 6

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs,*
 60 F.3d 867 (1st Cir. 1995) ...............................................................14-15

*United States v. Bump,*
 605 F.3d 548 (10th Cir. 1979) ................................................................. 18

*United States v. de la Jara,*
 973 F.2d 746 (9th Cir. 1992) ................................................................... 17

United States v. Lewis,
 943 F.2d 58, 1991 WL 172666 (10th Cir.1991) ...................................................... 18

*United States v. Ruehle*,
 583 F.3d 600 (9th Cir. 2009) ................................................................. passim

*United States v. Ryans*,
 903 F.2d 731 (10th Cir. 1990) ............................................................... 18

*United States v. Salyer*,
 853 F. Supp. 2d 1014 (E.D. Cal. 2012) ................................................... 13

*Valle del Sol Inc. v. Whiting, et al.*,
 709 F.3d 808 (9th Cir. 2013) ................................................................. passim

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
 266 F. Supp. 2d 1144 (C.D. Cal. 2003) ................................................... 13

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
 429 U.S. 252 (1977) .............................................................................. 20-22

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
 647 F.2d 18 (9th Cir. 1981) .................................................................. 18-19

State Legislation and Statutes

H.B. 2162, AZ Minority Rep., 49th Leg., 2d Sess. (Apr. 29, 2010) ................................... 16

S.B. 1070 ........................................................................................... passim

Websites

IRLI, Immigration Reform Law Institute, "About Us" available at http://irli.org/about .... 11

Federal Rules

Fed. R. Civ. Proc. 45(d)(2)(B)(i) ......................................................... 5

Fed. R. Civ. Proc. 45(f) ........................................................................ 1, 8

Fed. R. Evid. 501 ................................................................................ 11

Restatement (Second) of Conflict of Laws (1971) ......................................... 12

Other Authorities

Civil Service Commission ..................................................................................... 14

David A. Fahrenthold, *Self-deportation Proponents Kris Kobach, Michael Hethmon Facing Time of Trial*, Wash. Post (Apr. 24, 2012)................................................... 21

Kris W. Kobach, *Attrition Through Enforcement: A Rational Approach to Illegal Immigration*, 15 Tulsa J. Comp. & Int'l L. 153 (2008).............................................. 2

Op-Ed, Kris Kobach, *Why Arizona Drew a Line*, N.Y. Times (Apr. 28, 2010) ................. 21

This motion seeks to compel a third party, Mr. Kris Kobach, to produce documents pursuant to two subpoenas *duces tecum* properly issued by the Federal District Court for the District of Arizona in a civil action pending before that Court, *Valle del Sol v. Whiting*, No. 10-cv-01061-SRB.  The subpoenas called for compliance in Kansas, where Mr. Kobach resides, and Plaintiffs have accordingly filed this motion in the District of Kansas.  However, because the District Court of Arizona has already ruled twice on a similar issue pertaining to related third-party subpoenas, Plaintiffs are simultaneously filing a Motion to Transfer the instant Motion to Compel to the District Court of Arizona under Federal Rule of Civil Procedure 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. . . .").[1]

An order compelling compliance is plainly warranted here. The subpoenas seek information that is directly relevant to Plaintiffs' claims in the underlying case, which challenges Arizona's Senate Bill 1070 ("S.B. 1070"), a 2010 law that sought to regulate various immigration-related matters within the State, on the grounds (*inter alia*) that it was substantially motivated by anti-Latino and/or anti-Mexican animus.  Mr. Kobach has publicly acknowledged that he played a significant role in the drafting, editing, and advocacy for S.B. 1070; indeed, Mr. Kobach routinely refers to himself as either "a co-author" or "the principal author" of S.B. 1070.  Because of his integral role in drafting and passing that law, Plaintiffs served Mr. Kobach with subpoenas asking for his communications with Arizona legislators regarding S.B. 1070 and related legislation.

---

[1]    As explained in the accompanying Motion to Transfer, the Advisory Committee on Civil Rules has explained that "exceptional circumstances" justifying transfer under Rule 45(f) exist "when [the issuing] court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts"—both of which are present here.

In response to the subpoenas, Mr. Kobach has produced seven emails he received from his S.B. 1070 "co-author" (and the law's principal sponsor) former Arizona state Senator Russell Pearce.  *See* Preciado Decl. ¶ 20, Ex. R.  But he has withheld another 21 emails and email chains that he exchanged with Senator Pearce about how to draft S.B. 1070 and similar legislation on the ground that these communications are protected by the attorney-client privilege.  *See* Preciado Decl. ¶ 26, Ex. X; ¶ 19, Ex. Q.

The presiding judge in *Valle del Sol*, the Honorable Susan Bolton, has already held *twice* that communications of this nature do not constitute "legal advice," and therefore are not covered by the attorney-client privilege.  *See* Preciado Decl. ¶ 28, Ex. Z at 3-4; ¶ 27, Ex. Y at 9.

Mr. Kobach's ongoing refusal to produce responsive documents is not sustainable for the reasons already explained in Judge Bolton's previous orders. Accordingly, the motion to compel should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

For approximately the last ten years, Mr. Kobach has been involved in efforts around the country to empower state and local officials to enact and enforce their own immigration laws, in order to achieve what Mr. Kobach describes as "attrition through enforcement."  *See* Kris W. Kobach, *Attrition Through Enforcement: A Rational Approach to Illegal Immigration*, 15 Tulsa J. Comp. & Int'l L. 153 (2008).[2]  Mr. Kobach arguably achieved his greatest legislative success with Arizona's S.B. 1070, which literally codifies "attrition through enforcement" as statewide policy.  *See* S.B. 1070 § 1 ("The legislature declares that the intent of this act is to make attrition through enforcement the public policy of all state and local government agencies in Arizona.  The provisions of this act are intended to work together to discourage and deter the unlawful

---

[2] *Available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157057.

entry and presence of aliens and economic activity by persons unlawfully present in the United States.").

Mr. Kobach has made no secret of the fact that he played a significant role in drafting S.B. 1070. To this day, Mr. Kobach's campaign website describes him as "co-author of Arizona's SB 1070 illegal immigration law," Preciado Decl. ¶ 29, Ex. AA, and in more private domains Mr. Kobach has gone farther, calling himself the law's "principal drafter." *Id.* at ¶ 30, Ex. BB. S.B. 1070's "co-author," Senator Pearce, similarly was open about the help he received from Mr. Kobach in drafting the law, as well as from two non-profit organizations with which Mr. Kobach is affiliated: the Federation for American Immigration Reform ("FAIR") and its legal arm, the Immigration Reform Law Institute ("IRLI"). IRLI's website has long listed (and still does list) Mr. Kobach on its "Attorneys and Staff" page as "Of Counsel." *See* IRLI, Attorneys & Staff, http://www.irli.org/about/attorneys.

In light of Mr. Kobach's prominent role in drafting S.B. 1070 and the centrality of legislative intent to the claims remaining in this case, on August 15, 2013 Plaintiffs served FAIR and IRLI with subpoenas *duces tecum* for records of communications with Arizona state legislators regarding S.B. 1070 and similar legislation. *See* Preciado Decl. ¶ 31, Ex(s) CC & DD. A few months thereafter, FAIR and IRLI moved jointly to quash the subpoenas, arguing (among other things) that their attorneys, expressly including Mr. Kobach, advised Arizona legislators regarding the drafting of legislation, and that these communications were protected by the attorney-client privilege. *See* Preciado Decl. ¶ 32, Ex. EE at 23. Plaintiffs opposed the motion to quash, arguing that the communications between FAIR and IRLI attorneys and Arizona legislators was, at best, for the purpose of policy—not legal—advice, which is not entitled to attorney/client privilege. *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998). In support of their opposition, Plaintiffs submitted emails between FAIR/IRLI attorneys and Senator Pearce as representative examples of the types of communications for which FAIR/IRLI were

claiming attorney-client privilege.[3]  Among those emails were twelve exchanged with

Mr. Kobach.  *See infra*, II.B.

On December 11, 2013, Judge Bolton denied the motion to quash the subpoenas in

nearly all respects (granting it only with regard to an ambiguous term not present in the

subpoenas to Mr. Kobach), holding that the attorney-client privilege was not available

because FAIR and IRLI "were offering policy—not legal—advice."  Preciado Decl. ¶ 27,

Ex. Y at 9.  Judge Bolton also denied a subsequent motion for reconsideration that again

argued that the subpoenaed communications were protected by attorney-client privilege.

*See* Preciado Decl. ¶ 28, Ext. Z.

During the briefing on the FAIR and IRLI motion to quash, those two

organizations disclaimed any custody or control of communications Mr. Kobach

exchanged with Arizona legislators.  Therefore, in October 2013, Plaintiffs served Mr.

Kobach with a subpoena directly; Plaintiffs served him with two more nearly identical

subpoenas in March 2014.  Preciado Decl. ¶¶ 3, 16 and 21.  Generally speaking, the

subpoenas (like those to FAIR and IRLI) command production of Mr. Kobach's

communications with Arizona state officials regarding S.B. 1070 and related legislation

from January 1, 2005 through December 31, 2012.  *See id*.

To date, and in response to the subpoenas, Mr. Kobach has produced just 7 emails

(totaling 15 pages) he received from Senator Pearce.  Mr. Kobach has withheld another

21 emails and email strings (hereinafter referred to together as "emails") that he

exchanged with Senator Pearce about how to draft S.B. 1070 and similar legislation on

---

[3] Plaintiffs obtained these emails through a request to Senator Pearce under Arizona's
Public Records Act ("PRA").  Through that process, however, Plaintiffs learned that, in
communicating with Mr. Kobach, Senator Pearce sometimes used private email
accounts—which were not searched for records responsive to Plaintiffs' PRA request—
and that most Arizona legislators do not preserve their email communications.

the ground that these communications are protected by the attorney-client privilege.[4]  *See* Preciado Decl. ¶ 20, Ex. R; ¶ 26, Ex. X; ¶ 19, Ex. Q.  Mr. Kobach maintains that Judge Bolton's orders rejecting FAIR and IRLI's arguments regarding attorney-client privilege do not foreclose his current claim of privilege because, first, his "relationship with Senator Pearce is entirely independent of, and distinct from, that between FAIR/IRLI and Senator Pearce"; and second, he disagrees with the characterization of his communications with Senator Pearce as "policy advice."  *See* Preciado Decl. ¶ 13, Ex. K. Mr. Kobach also maintains that Senator Pearce's voluntary production, pursuant to a Public Records Act request by Plaintiffs, of emails the two exchanged did not destroy any attorney-client privilege.  *See* Preciado Decl. ¶ 17, Ex. O.

Having reached an impasse in their negotiations with Mr. Kobach, Plaintiffs are now requesting an order compelling him to produce the subpoenaed records.

## STANDARD

The Federal Rules of Civil Procedure allow a party to obtain from a non-party discovery materials of any non-privileged matter that is relevant to a claim or defense of any party.  *See* Fed. R. Civ. Proc. 45(a)(1)(C).  The "scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34."  *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc*., 211 F.R.D. 658, 661 (D. Kan. 2003); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006); *Lewin v. Nackard Bottling Co*., 2010 WL 4607402, at *1 n.1 (D. Ariz. Nov. 4, 2010). "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. Proc. 45(d)(2)(B)(i).

---

[4] Mr. Kobach initially raised relevancy, undue burden, harassment and interference with constitutional duties objections, but most, if not all, of those objections appear to be resolved now.  Plaintiffs nonetheless address those objections at the end of this memorandum.

The standard on a motion to compel under Rule 45 is the same as that under Rule 26(b) in that "the requested information must be both nonprivileged and relevant." *Kear v. Kohl's Dept. Stores, Inc.*, 2013 WL 3581671, at *1 (D. Kan. July 12, 2013).  The court has to examine "whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 661. The party moving to compel must address objections in its motion, placing the burden on the party opposing the motion. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660 (D. Kan. 2004); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 671 n.37 (D. Kan. 2004) ("[T]he party filing the motion to compel has the initial burden to address each boilerplate objection in its motion to compel.  By doing so, the moving party brings the objection 'into play' and places the burden on the objecting party to support its objection when its responds to the motion to compel"); *see also Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed.").  Prior to filing a motion to compel, "the movant must make reasonable efforts to confer.  That generally requires counsel to 'converse, confer, compare views, consult and deliberate.'" *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 456, 459 (D. Kan. 1999) (citation omitted).  The party asserting the attorney-client privilege has the burden of establishing its applicability. *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995)); *see also United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (the "party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication") (internal quotations omitted).

## ARGUMENT

Mr. Kobach is withholding 21 emails and/or email chains he exchanged with Senator Pearce, claiming that they are protected by the attorney-client privilege.  *See*

Preciado Decl. ¶ 26, Ex. X.  As explained below, Mr. Kobach's assertion of privilege is foreclosed by two of Judge Bolton's prior orders in this case, which considered and rejected this precise argument.  Further, even if Judge Bolton had not already rejected the argument, Mr. Kobach cannot demonstrate that the communications at issue are protected by the attorney-client privilege.

Although the applicability of the attorney-client privilege is seemingly the only dispute still at issue, Mr. Kobach previously asserted that complying with the most recent subpoena Plaintiffs served on him would be unduly burdensome and would interfere with his constitutional duties as Kansas Secretary of State; that the information sought is "irrelevant"; and that the subpoena was "calculated to harass."  *See* Preciado Decl. ¶ 25, Ex. W at 2-5.  Plaintiffs subsequently narrowed the scope of the subpoena, which seemed to address these objections; nonetheless, in light of *Sonnino*, 221 F.R.D. at 671 n.37, Plaintiffs will address those objections briefly at the end of this memorandum.

## I.    MR. KOBACH'S PRIVILEGE CLAIM IS FORECLOSED BY THE LAW OF THE CASE IN THE UNDERLYING LITIGATION.

As an initial matter, and as discussed above, whether Mr. Kobach's communications with Senator Pearce are protected by the attorney-client privilege has already been decided in the underlying litigation, and it is now the law of the case that they are *not* so privileged.  His claim to the contrary therefore should be dismissed outright.

As the Supreme Court has explained:

> the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (citations and quotation marks omitted, alteration in original).  Although Plaintiffs have had to file the instant motion initially in the District of Kansas, rather than before Judge Bolton, "the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Id.* at 816.[5]

The argument for application of the law of the case to compel Mr. Kobach to produce the withheld emails is an unusually strong one: the "rule of law" decided upon by Judge Bolton—that communications regarding how to draft legislation are not for the purpose of giving or receiving "legal advice," and therefore are not privileged—was made on the basis of a record that was mostly comprised of emails that Mr. Kobach *still* claims are privileged.

In moving to quash Plaintiffs' subpoenas to them, FAIR and IRLI argued that the requested records would likely be protected by the attorney-client privilege, pointing specifically to its close ties to Mr. Kobach and his work with legislators.  *See* Preciado Decl. ¶ 32, Ex. EE ("[L]egislative and executive branch officials routinely request legal advice from Mr. Kobach in litigation and for legislative drafting. Although not an employee, Kobach is 'of Counsel' to IRLI."); *Id.* ¶ 33, Ex. FF (discussing Mr. Kobach's work with IRLI and state legislators, and using it as a basis to argue that "it is nearly certain" that Plaintiff's subpoena sought documents "subject to attorney client privilege").  In opposing the motion to quash, and to demonstrate that the

---

[5] As explained more fully in the accompanying Motion to Transfer, new Federal Rule of Civil Procedure 45(f), which explicitly permits transfer of subpoena-related motions, was added in 2013 at least in part to facilitate the ready application of the law of the case to subpoena-related motions that have to be filed initially in coordinate courts.  *See* Advisory Committee Notes on 2013 Amendments to Rule 45 ("[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.").

communications at issue were not for the purposes of securing "legal advice," Plaintiffs submitted as exhibits 23 emails exchanged between Sen. Pearce and individuals associated with FAIR and IRLI; 11 of those emails were either sent to or received by Mr. Kobach, with the earliest email involving Mr. Kobach dated March 6, 2006, while the latest one was dated April 28, 2010.  *See* Preciado Decl. ¶¶ 34-44, Exs. GG to QQ.[6] Based on their dates and subject matters, it is nearly certain that Mr. Kobach is withholding some of those same emails (or emails discussing the identical subject matter) as privileged.  *See id.* and *compare to* Preciado Decl. ¶ 26, Ex. X.

In an order dated December 11, 2013, Judge Bolton denied FAIR and IRLI's argument that the subpoenas implicated the attorney-client privilege, finding that "Movants [FAIR and IRLI] were offering policy—not legal advice."  *See* Preciado Decl. ¶ 27, Ex. Y at 9.  FAIR and IRLI subsequently moved for reconsideration of that holding. *Id.* ¶ 47, Ex. SS at 2-4.  After another round of briefing, Judge Bolton rejected the Motion for Reconsideration; she noted that FAIR and IRLI "[e]ssentially . . . are arguing over semantics and disagree with the Court's use of the word 'policy,'" but that, regardless of how the communications in the record are labeled, they are not protected by the attorney-client privilege.  *See* Preciado Decl. ¶ 28, Ex. Z at 3 (collecting cases).

When Plaintiffs' counsel asked Mr. Kobach to explain why Judge Bolton's ruling on FAIR and IRLI's Motion to Quash does not preclude the very privilege claim he has invoked to withhold his communications with Senator Pearce—*i.e.*, why the law of the case does not control his claim of privilege—Mr. Kobach gave two justifications: "First, my attorney/client relationship with Sen. Pearce is entirely independent of, and distinct from, that between FAIR/IRLI and Sen. Pearce.  I was not acting on behalf of FAIR when providing legal advice to Sen. Pearce."  Preciado Decl. ¶ 13, Ex. K.  At best, this

---

[6] Mr. Kobach told Plaintiffs' counsel that his alleged attorney-client relationship with Senator Pearce began in February of 2006.  *See* Preciado Decl. ¶ 10, Ex. H.

argument could mean that Mr. Kobach is not bound by the precise *order* Judge Bolton entered or the subpoenas Plaintiffs sent to FAIR and IRLI.  It is plainly insufficient, however, to avoid the law of the case doctrine, which is concerned with what "rule of law" has been established in the case, not whether it was established through a procedural vehicle involving the exact same individuals to whom the rule is later applied.  *See Christianson*, 486 U.S. at 815-16.

Mr. Kobach articulated his second argument for avoiding the law of the case doctrine as follows:

> Second, as you are aware, FAIR/IRLI is a policy-oriented organization; and Judge Bolton concluded that the advice provided was policy-related, rather than legal.  Crucially, Judge Bolton found that "Plaintiffs agree with the Court's initial interpretation of those communications as policy advice." That does not accurately describe the legal consultation that I provided to Sen. Pearce.  Accordingly, I do not think that the conclusions of Judge Bolton can be transferred to my assertion of the privilege.

Preciado Decl. ¶ 13, Ex. K.  This argument amounts to a repetition of the precise argument made by FAIR and IRLI,[7] and ignores, moreover, the fact that more than half of the emails Judge Bolton reviewed to reach her conclusion involved Mr. Kobach himself and the same subject matter (drafting and passage of S.B. 1070 and its precursors).  Mr. Kobach's disagreement with the law of the case is not a justification to ignore it.  *See Christianson*, 486 U.S. at 815-16; *Mcllravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034-35 (10th Cir. 2000).

In sum, the precise privilege claim on which Mr. Kobach relies has already been rejected in this case, and on the basis of communications that he still maintains are

---

[7] In fact, IRLI describes itself specifically as a *legal* organization: "America's only public interest law organization working exclusively to protect the legal rights, privileges, and property of U.S. citizens and their communities from injuries and damages caused by unlawful immigration." *See* IRLI's website, available at http://irli.org/.

privileged.  That reason is more than sufficient to reject his attorney-client privilege claim and to order him to produce the subpoenaed records.

## II.  MR. KOBACH HAS NOT AND CANNOT ESTABLISH THE APPLICABILITY OF THE ATTORNEY-CLIENT PRIVILEGE.

Even if Mr. Kobach's privilege claim was not foreclosed by Judge Bolton's prior orders (which it is), it would still fail, as Mr. Kobach has not and cannot establish the necessary elements of the attorney-client privilege, on which Mr. Kobach bears the burden of proof.  Application of the attorney-client privilege requires proof of eight elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607; *see also Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 652 (D. Kan. 2011) (same).[8]

---

[8] Because the court in the underlying litigation is sitting in federal question jurisdiction and is considering claims premised on the alleged violation of rights secured by the U.S. Constitution, Mr. Kobach's privilege claims are governed by federal common law.  *See* Fed. R. Evid. 501.  Insofar as there is any conflict between the federal common law of attorney client privilege as articulated by the Ninth Circuit (where Plaintiffs' case is located) and the Tenth Circuit (where Mr. Kobach resides), federal common law choice-of-law analysis follows the Restatement (Second) of Conflict of Laws (1971).  *See, e.g.*, *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006); *Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007).  That approach generally applies the law of the jurisdiction with "the most significant relationship with the [potentially privileged] communication."  Rest. (Second) of Conflict of Laws § 139.  All of the communications at issue here were exchanged with a member of the Arizona State Legislature and concerned the drafting and passage of Arizona state statutes.  Even if Mr. Kobach was in Kansas (or elsewhere) when he exchanged emails with Senator Pearce, Arizona clearly has the most significant relationship with the communications, and so the federal common law as developed by the Ninth Circuit applies.  Plaintiffs emphasize, however, that there does not appear to be any conflict between the two

Where it applies, "[t]he attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *Ruehle*, 583 F.3d at 607 (citations omitted). But "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*; *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding that since the attorney-client privilege "has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose"); *Black & Veatch Corp. v. Aspen Ins. Ltd.*, 2014 WL 806144, at *7 (D. Kan. Feb. 28, 2014) ("The attorney-client privilege 'should be strictly confined within the narrowest possible limits' . . . . [because] it deprives the factfinder from otherwise relevant information.").

Mr. Kobach has not met his burden of proving several of the essential elements of the attorney-client privilege. He has provided no evidence demonstrating that he ever had an attorney-client relationship with Senator Pearce. And even assuming such a relationship did exist, Mr. Kobach did not—and could not—establish that his communications with Sen. Pearce were for the purpose of *legal* advice, as opposed to policy or some other advice; that his emails with Senator Pearce were intended to be confidential; or that, even assuming the communications were once privileged, that the privilege has not been destroyed.

**A. Mr. Kobach has failed to present evidence that he ever formed an attorney-client relationship with Senator Pearce.**

Mr. Kobach has made only a bare assertion that an "attorney-client relationship between [him] and Mr. Pearce was formed in February of 2006." *See* Preciado Decl. ¶ 10, Ex. H. To date Mr. Kobach has failed to produce any evidence to support this alleged attorney-client relationship. He has not produced a contract, a retention agreement, or

---

Circuits' views of attorney-client privilege that would matter for this motion. Where practicable, Plaintiffs have provided citations to both jurisdictions' case law.

even an affidavit to support his claim that an attorney-client relationship existed.  It is axiomatic that "an assertion of privilege without evidence to support it will not prevail." *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F. Supp. 2d 1144, 1147 (C.D. Cal. 2003).  This deficiency is reason alone to grant the instant motion.  *Id.*

### B. The record evidence demonstrates that the challenged communications were not the kind of "legal advice" covered by the privilege.

Even assuming, *arguendo*, that an attorney-client relationship was formed between Mr. Kobach and Senator Pearce, Mr. Kobach would still have the burden of proving that "the primary or predominate purpose" of each withheld communication was for Senator Pearce (the alleged client) to obtain "legal advice."  *United States v. Salyer*, 853 F. Supp. 2d 1014, 1018 (E.D. Cal. 2012); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 675 (D. Kan. 2005) ("Legal advice must predominate for the communication to be protected."); *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007).  That he cannot do, as the record evidence demonstrates that his communications were for the purpose of lobbying and/or giving advice regarding matters of policy.

Communications are not "legal advice" within the meaning of the attorney-client privilege "merely because an attorney conveyed information to a client."  *Metzler Contracting Co. LLC v. Stephens*, 642 F. Supp. 2d 1192, 1202 (D. Haw. 2009); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 ("Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice.") (citation omitted).  Communications on matters of policy, strategy, or politics, for example, clearly do not qualify as "legal advice."  *See, e.g., In Re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) ("[A]dvice on political, strategic or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege."); *Baldus v.*

*Brennan*, 2011 WL 6385645, at *3 (E.D. Wis. Dec. 20, 2011) (same); *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005) (same).  As one court explained:

> [T]he privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties, or other functions that create the law.  Hence, when an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.

*General Elec. Co. v. Johnson*, 2006 WL 2616187, at *16 (D.D.C. Sept. 12, 2006); *see also In re County of Erie*, 473 F.3d at 421 ("A lawyer's lack of formal authority to formulate, approve or enact policy does not actually prevent the rendering of policy advice to officials who do possess that authority. . . . When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor . . . that consultation is not privileged.").  This reasoning has led the First Circuit to hold, for example, that the attorney-client privilege was inapplicable where an agency's outside, retained counsel had "drafted . . . orders" that the agency "adopted verbatim"; "author[ed] . . . [a] regulation"; and "developed adjudicative data that the agency later reissued as its own." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); *see also Scott v. City of St. Louis*, 196 F.R.D. 551, 554-55 (E.D. Mo. 2000) (reaching the same conclusion regarding the communications between an attorney and his client, the municipal Civil Service Commission ("CSC"), because the attorney's report and recommendations to it about a contested case were "an integral component of the [CSC]'s adjudicative process").

Here, the record evidence demonstrates that the predominant purpose of the communications between Mr. Kobach and Senator Pearce was to convey information on how to draft S.B. 1070 and its precursors in light of shared policy and political objectives.  Indeed, several communications already disclosed to Plaintiffs pursuant to a PRA request to Senator Pearce, and included in Mr. Kobach's privilege log, demonstrate that the relationship went beyond mere consultation, and involved Sen. Pearce accepting verbatim

Mr. Kobach's *unsolicited* suggestions and requests on how to draft parts of S.B. 1070, as well as requests for new legislative proposals. Mr. Kobach was consulted on, quite literally, "functions that create the law," *Johnson*, 2006 WL 2616187, at *16, and so the communications in question are not privileged. *See id.*; *see also In re County of Erie*, 473 F.3d at 421; *Texaco Puerto Rico*, 60 F.3d at 884; *Scott*, 196 F.R.D. at 555.

For example, in a November 18, 2009 email, Mr. Kobach asked Senator Pearce to add specific language to S.B. 1070 to help Mr. Kobach in his efforts to "defend [the Maricopa County Sheriff's Office ('MCSO') and the Maricopa County Attorney's Office against the ACLU and the Justice Department."[9]  Preciado Decl ¶ 34, Ex. GG. That provision became § 6 of S.B. 1070, which in 2012 the Supreme Court held was preempted. *See Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492, 2507 (2012). The November 18, 2009 email was not the only instance where Mr. Kobach requested that Senator Pearce add provisions to S.B. 1070. *See* Preciado Decl. ¶ 35, Ex. HH (email dated February 8, 2010 from Mr. Kobach to Senator Pearce stating only (in reference to an attachment): "Please add this language to your trespass bill, if possible. I will explain when we meet."); *Id.* ¶ 26, Ex. X (Kobach privilege log entry 6 (same email)).

Perhaps no communication reveals the influence Mr. Kobach had on S.B. 1070 more than an email Mr. Kobach sent to Senator Pearce on April 28, 2010—*i.e.,* between

---

[9] At the time, Mr. Kobach represented Maricopa County, Arizona in a lawsuit brought by the American Civil Liberties Union and others, as well as with regard to an investigation initiated by the Civil Rights Division of the U.S. Department of Justice. *See Melendres v. Arpaio*, ___ F. Supp. 2d ___, 2013 WL 2297173 (D. Ariz. 2013) (enjoining, *inter alia*, the MSCO's unconstitutional policies of racially profiling Latinos and of detaining individuals solely on suspicion that they were violating civil immigration laws); *id.* at *72 n.96 (noting that, at one time "[t]he MCSO . . . base[d] its training concerning its deputies continued authority to enforce federal immigration law on the legal theories of Kris Kobach. Mr. Kobach is apparently legally trained, but it is not clear that MCSO sought his legal counsel on whether his theories were in compliance with the law in this jurisdiction.").

the enactment of S.B. 1070 and that of H.B. 2162, the "trailer" bill that made amendments thereto—regarding a suggested amendment to Section 2(B).[10]  It stated, in relevant part the following:

> I discussed all the changes with Mike Hethmon[11] and he concurred.  But there is one additional point that he suggested—which you will certainly agree with.  When we drop out "lawful contact" and replace it with "a stop, detention, or rest, [sic] in the enforcement [sic] a violation of any title or section of the Arizona code" we need to add "or any county or municipal ordinance."  This will allow police to use violations of property codes (ie, cars on blocks on the yard) or rental codes (too many occupants of a rental accommodation) to initiate queries as well.
> I have not received anything from the people on the phone this afternoon. Please ensure they make this addition as well. Thanks!

Preciado Decl. ¶ 36, Ex. II; *see also* Preciado Decl. ¶ 26, Ex. X (Kobach privilege log entry 9 (apparently same email)).

Mr. Kobach's communications with Senator Pearce can be characterized a number of ways—as the giving of policy advice, as the actual making of policy, and/or as traditional lobbying—but Mr. Kobach cannot seriously contend that their predominant purpose was for Senator Pearce to obtain "legal" advice.  Accordingly, they are not privileged.  *See In re County of Erie*, 473 F.3d at 421; *In Re Lindsey*, 148 F.3d at 1106.

### C.   The record illustrates that the communications were never intended to be kept confidential.

Confidentiality "is the key to maintaining attorney-client privilege," and a party waives that privilege when "he voluntarily discloses to a third party material or information that he later claims is protected."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *see also United States v. de la Jara*, 973 F.2d 746 (9th Cir.

---

[10] As amended by H.B. 2162, Section 2(B) requires law enforcement officers to check the immigration status of those they stop, detain, or arrest if there is reasonable suspicion to believe they are in the country unlawfully.

[11] Mike Hethmon is an attorney at IRLI.

1992) ("[W]e will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.").  Mr. Kobach cannot demonstrate that the putative attorney-client communications were ever intended to be confidential, which is an independent reason why his claim of attorney-client privilege fails.  *Id.*

In fact, the record Plaintiffs have submitted reveals that Senator Pearce routinely touted in emails and even in legislative hearings that S.B. 1070 "is on sound constitutional ground" because Mr. Kobach provided its language.  *See* Preciado Decl. ¶ 45, Ex. RR at 9 n.7; *cf. United States v. Ary*, No. 05–10053–01–JTM, 2005 WL 2367541, at *6 (D. Kan. Sept. 27, 2005) ("A client waives the privilege by deliberately injecting into the case the advice which he received from his attorney." (citation and quotation marks omitted)).  Senator Pearce, moreover, voluntarily forwarded emails Mr. Kobach sent him to third parties, and regularly copied third parties on his emails with Mr. Kobach.  S*ee* Preciado Decl. ¶ 26, Ex. X (Kobach privilege log entries 1, 2, 10, 12 and 15).  Similarly, Mr. Kobach copied third parties on some of the emails to Senator Pearce he claims are protected.  *See id.* ¶ 26, Ex. X (Kobach privilege log entries 3, 5 and 7).  And perhaps most importantly, in response to a Public Records Act request sent to him by Plaintiffs' counsel, Senator Pearce disclosed numerous emails he exchanged with Mr. Kobach.  All of these actions evidence Senator Pearce's lack of concern for confidentiality of his communications with Mr. Kobach, and vice versa.[12]  Because the communications were not intended to be confidential when made, neither Mr. Kobach

---

[12] The fact that Senator Pearce may have recently regretted not keeping confidential his communications with Mr. Kobach has no effect on the relevant question for this element of the privilege: whether Senator Pearce intended his communications with Mr. Kobach to remain confidential at the time they were made.  *See Ruehle*, 583 F.3d at 607; *Pouncil*, 277 F.R.D. at 652.

nor Senator Pearce can retroactively claim privilege now.  *See In re Grand Jury Proceedings*, 616 F. 3d at 1183.

> **D.    Even if the attorney-client privilege ever applied to any of the subpoenaed records, the privilege has been destroyed.**

Even where it applies, the attorney-client privilege is not absolute, as it can "be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents."  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001); *see also In re Qwest Comms. Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (same).  Here, even assuming *arguendo* that the attorney-client privilege once applied to the subpoenaed records, that privilege has been destroyed at least as to the communications regarding S.B. 1070 and other topics by virtue of Sen. Pearce's voluntary disclosure of allegedly privileged communications on the same subject.  *See Gomez*, 255 F.3d at 1131; *Qwest*, 450 F.3d at 1185.  Here, Sen. Pearce—the holder of the alleged privilege—has already voluntarily disclosed numerous emails between himself and Mr. Kobach about S.B. 1070 precursor legislation and the drafting, intent, and passage of S.B. 1070 itself.  It therefore cannot be disputed that any privilege as to these communications has been waived.  *Id.*

Moreover, waiver of privilege goes beyond the particular communications previously disclosed: "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."  *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990); *United States v. Bump*, 605 F.3d 548, 551 (10th Cir. 1979) (same); *United States v. Lewis*, 943 F.2d 58, 1991 WL 172666, at *3 (10th Cir. 1991) (same); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) (same); *see also Weil*, 647 F.2d at 24 (collecting cases)).  There is "no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the

nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Stanford v. Roche*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) (citation omitted).

Here, it has not been established that there was ever an attorney-client relationship; nor that the advice rendered by Mr. Kobach was "legal" in nature, as opposed to policy advice or lobbying.  In sharp contrast, there is ample record evidence that the alleged client, Senator Pearce, willingly disclosed to Plaintiffs' counsel communications with Mr. Kobach regarding all manner of topics related to S.B. 1070 and precursor legislation.  In advocating for S.B. 1070's passage, moreover, Sen. Pearce argued that it was constitutional because it was based on Mr. Kobach's instructions; fairness dictates that the Plaintiffs in an action challenging the constitutionality of the same law should have access to the very instructions Sen. Pearce used to justify its passage.  *Cf. United States v. Ruedlinger*, No. 96–40045–SAC, 1997 WL 161960, at *3 (D. Kan. Mar. 7, 1997) ("The [attorney-client] privilege also may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.  The privilege cannot at once be used as a shield and a sword." (citations and quotation marks omitted)).

Additionally, there has been no articulation of the prejudice that would befall Mr. Kobach or Senator Pearce if the Court were to allow disclosure of these documents, whereas Plaintiffs *would* be prejudiced if they were denied evidence that is highly relevant to the intent of S.B. 1070—*the* central issue in their remaining preemption, Fourth Amendment, and equal protection claims in the on-going litigation.  *See Weil*, 647 F.2d at 24 ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.").  Taken together, these considerations lead inexorably to the conclusion that whatever privilege may have previously existed has been waived as to all communications between Senator Pearce and Mr. Kobach relating to S.B. 1070 and its precursors.  *Id.*

## III.  THE SUBPOENAS SEEK RELEVANT INFORMATION AND ARE NOT UNDULY BURDENSOME.

Plaintiffs' subpoenas are not unduly burdensome because they are specifically tailored to elicit documents relevant to the legislative intent of S.B. 1070.  As described below, the legislative intent behind passage and implementation of S.B. 1070 is at issue in several of the remaining claims in this case.  Because Mr. Kobach, as he himself acknowledges, played a significant role in shaping and passing S.B. 1070 and similar Arizona legislation, the communications between Mr. Kobach and Arizona legislators are relevant to why S.B. 1070 was written as it was; why legislators supported its passage; what they believed its provisions required; and what effects they believed the law would have, among other topics that bear on legislative intent.

### A.  Legislative intent is at issue in several remaining claims and any defenses to them.

Plaintiffs have alleged that S.B. 1070 violates the Equal Protection Clause of the Fourteenth Amendment because racial and/or national origin animus was a motivating factor in its enactment.  *See* First Am. Compl. ¶¶ 183-188, *Valle del Sol*, 2:10-CV-01061 (D. Ariz. Oct. 31, 2011), ECF No. 511.  Under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and *Hunter v. Underwood*, 471 U.S. 222 (1985), Plaintiffs have the initial burden of showing that invidious animus was "a 'substantial' or 'motivating' factor behind enactment" of S.B. 1070.  *Hunter*, 471 U.S. at 228.  Once Plaintiffs make the requisite showing of discriminatory intent, the burden shifts to Defendants to prove, by a preponderance of the evidence, "that the law would have been enacted without this factor."  *Id.*

Recognizing that "officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority," *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982), *Arlington Heights*-type cases examine various forms of

circumstantial evidence of invidious intent, including (but expressly not limited to): legislative history and other contemporaneous statements and communications by members of the legislature; the relevant "historical background"; the "sequence of events leading up to the challenged decision"; the effects of the challenged action or legislation, including whether it has a disproportionate impact on particular groups; any substantive or procedural departures from usual decision making; and whether the decision makers were acting on the invidious motivations of third parties, including constituents.  *See Arlington Heights*, 429 U.S. at 266-68; *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009).

Legislative intent is also directly relevant to Plaintiffs' claim that S.B. 1070's day laborer provisions (Sections 5(A) and (B)) unconstitutionally suppress speech.  *See Valle del Sol Inc. v. Whiting*, 709 F.3d 808, 819-20 (9th Cir. 2013) (affirming a preliminary injunction of those provisions).

**B.    The subpoenaed documents are directly relevant to legislative intent in enacting S.B. 1070.**

Mr. Kobach's central role in S.B. 1070's development and enactment demonstrates that the subpoenaed documents are directly relevant to the legislative intent in passing S.B. 1070.  As explained above and elsewhere, Mr. Kobach is responsible for much of S.B. 1070's wording and even entire provisions.  *See, e.g.*, *supra* II.B; Preciado Decl. ¶ 48, Ex. TT at 3 ("In Arizona, Hethmon and Kobach became involved after GOP state Sen. Russell Pearce wrote the first draft of [S.B. 1070]—offering small revisions and in some cases rewriting whole sections—during a series of phone calls and e-mails."); *see also* Preciado Decl. ¶ 49, Ex. UU at 1 (defending S.B. 1070 "[a]s someone who helped draft the statute").

As Judge Bolton has already held in rejecting FAIR and IRLI's argument that the subpoenas they sought to quash sought irrelevant evidence:

Plaintiffs' subpoenas seek communications between Arizona legislators and the people advising them through the process of drafting the legislation that

eventually became S.B. 1070. The Court finds that those communications are likely to contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting S.B. 1070 as "contemporary statements by members of the decisionmaking body." *Arlington Heights* makes clear that Plaintiffs will need to present such evidence to succeed on their Equal Protection claims. The subpoenas therefore seek evidence that is relevant.

Preciado Decl. ¶ 27, Ex. Y at 6 (quoting *Arlington Heights*, 429 U.S. at 268).

### C.     The subpoenas are not overly broad.

Mr. Kobach objected to the final subpoena Plaintiffs served on him as unduly burdensome, arguing that it asked for "every S.B. 1070-related communication with anyone in the world and has no time limitation whatsoever." *See* Preciado Decl. ¶ 25, Ex. W at 2. In subsequent communications with Mr. Kobach, however, Plaintiffs made clear that the subpoena seeks only communications he had with Arizona state officials from January 1, 2011 through December 31, 2012. After that time, Mr. Kobach has not renewed nor repeated his objection that the subpoena imposes an undue burden, but Plaintiffs nonetheless note that the subpoena's timeframe is reasonably tailored to capture relevant documents without unnecessarily burdening Mr. Kobach. In light of his role in the drafting, passage, and defense of S.B. 1070—and the breadth of the factors relevant to legislative intent—Plaintiffs are justified in seeking communications that took place after the law's passage, implementation, and major legal setback (the Supreme Court's decision in *Arizona v. United States*, which was issued in June 2012).

Such communications could be relevant evidence of legislative intent (or could lead to such evidence) in a number of ways. They could involve discussions of why certain provisions were worded as they were, what they were meant to accomplish, or how provisions now considered ambiguous were intended to be interpreted. They could reveal how the law is being interpreted and enforced—which is itself relevant to the *Arlington Heights*' disparate impact factor—and whether that accords with what was intended. These communications could also include requests for legislation on matters

that S.B. 1070 did not address or to "fix" provisions of S.B. 1070 that courts have enjoined.  Here, too, Judge Bolton has held that post-enactment communications are relevant to the intent of S.B. 1070.  As she held in rejecting that argument by FAIR and IRLI, "[s]tatements made after the law's enactment can also be evidence of the legislators' intentions in drafting and supporting the bill to the extent that they may reveal past thoughts and feelings."  Preciado Decl. ¶ 27, Ex. Y at 8.[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to compel and enter an order requiring Mr. Kobach to produce the withheld records within one week of the order's date.

Dated:  May 27, 2014

By:   s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
Chief Counsel & Legal Director
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
T:  (816) 994-3311
dbonney@aclukansas.org

Justin B. Cox (*pro hac vice pending*)
ACLU Foundation
1989 College Avenue NE
Atlanta, GA 30317
T:  (404) 221-5854
F:  (404) 221-5857
jcox@aclu.org

Karen A. Tumlin (*pro hac vice pending*)
Nora A. Preciado (*pro hac vice pending*)
Alvaro M. Huerta (*pro hac vice pending*)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA 90010
T:  (213) 639-3900
F:  (213) 639-3911
tumlin@nilc.org
preciado@nilc.org
huerta@nilc.org

*Attorneys for Plaintiffs*

---

[13] For the reasons stated above regarding relevance and burden, Plaintiffs do not believe it necessary to address Mr. Kobach's objections alleging that complying with the subpoenas would interfere with his constitutional duties as Kansas Secretary of State or that they were "calculated to harass," except to clarify that Mr. Kobach was served with these subpoenas in his personal capacity for work done in his personal time and not in his official capacity as Kansas' Secretary of State.

## CERTIFICATE OF SERVICE

I Stephen Douglas Bonney, do hereby Certify that on this 27th day of May, 2014, I electronically transmitted the foregoing to the Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.  I further Certify that a true and correct copy of the foregoing has been furnished by electronic mail (Mr. Kobach agreed to accept electronic service instead) and a *courtesy* copy U.S. Mail mailed to:

Kris Kobach
4701 N. 130th Street
Kansas City, KS  66109
kkobach@gmail.com


By:    s/ Stephen Douglas Bonney
       Stephen Douglas Bonney