## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **VALLE del SOL, INC., et al.,** ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| **vs.** ) | **Case No. 14-mc-219-JAR** |
| ) | |
| ) | |
| **KRIS W. KOBACH,** ) | |
| ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER
## GRANTING MOTION TO TRANSFER

Petitioners seek to compel non-party Kris Kobach to produce documents pursuant to two

subpoenas *duces tecum* properly issued by the United States District Court for the District of

Arizona in a civil action pending before that court, *Valle del Sol, et al. v. Whiting, et al.*, No. 10-

cv-01061-SRB (Doc. 1).  The subpoenas call for compliance in Kansas, where Kobach resides,

and Petitioners filed this motion in the District of Kansas.  Petitioners also move to transfer the

Motion to Compel to the United States District Court for the District of Arizona under Fed. R.

Civ. P. 45(f) (Doc. 3).  Respondent Kobach opposes both motions.  For the reasons set forth in

detail below, the Court grants Petitioners' motion and transfers the pending Motion to Compel to

the District of Arizona.

### I.    Background

These motions arise out of an ongoing constitutional challenge to Arizona Senate Bill

1070 ("S.B. 1070"), which created a comprehensive set of state immigration laws.  The *Whiting*

case is a massive class action that has been pending for nearly four years, and asserts multiple causes of action challenging the law on the ground that it was substantially motivated by anti-Latino and/or anti-Mexican animus.

Kobach has served in the elected office of Kansas Secretary of State since January 2011. Prior to then, Kobach was a professor of constitutional law.  From 2004 to present, Kobach has maintained a part-time law practice specializing in the area of federal preemption.  Kobach has served in his private capacity as counsel for S.B. 1070's "co-author" and principal sponsor, former Arizona state Senator Russell Pearce.  Senator Pearce was open about the help he received from Kobach in drafting the law, as well as from two non-profit organizations with which Kobach is affiliated: the Federation for American Immigration Reform ("FAIR") and its legal arm, the Immigration Reform Law Institute ("IRLI").

In August 2013, Petitioners served FAIR and IRLI with subpoenas *duces tecum* for records of communications with Arizona state legislators regarding S.B. 1070 and similar legislation.  FAIR and IRLI moved jointly to quash the subpoenas, arguing that their attorneys, including Kobach, advised Arizona legislators regarding the drafting of the legislation, and that these communications were protected by the attorney-client privilege.  Petitioners opposed the motion to quash, arguing that the communications were, at best, for the purposes of policy—not legal—advice, which is not entitled to the privilege.  In support of their opposition, Petitioners submitted emails between FAIR and IRLI attorneys and Senator Pearce, as representative examples of the types of communications for which FAIR/IRLI were claiming attorney-client privilege.  Among those emails were twelve exchanged with Kobach.

The presiding judge in the underlying *Whiting* case, the Honorable Susan R. Bolton,

2

denied the motion to quash in nearly all respects, holding that the attorney-client privilege was not available because FAIR and IRLI "were offering policy—not legal—advice."[1]  The court further held that FAIR and IRLI were "lobbying Arizona legislators during the process of formulating and enacting S.B. 1070."[2]  As a result, Judge Bolton held that FAIR and IRLI could not satisfy the Ninth Circuit's eight-part test to determine whether information is protected by the attorney-client privilege because "advice of the type given in lobbying efforts" is not "legal advice," and therefore is ineligible for protection.[3]  Judge Bolton further held that "communications between Arizona legislators and the people advising them through the process of drafting the legislation that eventually became S.B. 1070" were relevant and discoverable, explaining "those communications are likely to contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting S.B. 1070 as 'contemporary statements by members of the decision making body.'"[4]  In denying FAIR and IRLI's motion for reconsideration, Judge Bolton noted that "they are arguing over semantics and disagree with the Court's use of the word 'policy.'"[5]

FAIR and IRLI disclaimed any custody or control of communications Kobach exchanged with Arizona legislators.  In October 2013 and March 2014,  Petitioners served Kobach with subpoenas directly.  Generally speaking, the subpoenas seek information that Petitioners contend is directly relevant to Petitioners' claims in the underlying *Whiting* case.  Kobach has publicly

---

[1]*See* Doc. 4-4, Ex. P at 9.

[2]*Id.*, Ex. Q at 3.

[3]*Id.* at 2–3 (citing *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)).

[4]Ex. P at 6 (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)).

[5]Ex. Q at 3 (collecting cases finding that advice of the type given in lobbying efforts is not privileged).

acknowledged that he played a significant role in the drafting, editing, and advocacy for S.B. 1070, going so far as to refer to himself as either "a co-author" or "the principal author" of S.B. 1070.  Petitioners served Kobach with subpoenas asking for his communications with Arizona legislators regarding S.B. 1070 and related legislation.

In response, Kobach, who represents himself,  has produced seven (7) emails he received from Senator Pearce.  Kobach has withheld another twenty-one (21) emails and email chains that he exchanged with Senator Pearce about how to draft S.B. 1070 and similar legislation on the ground that these communications are protected by the attorney-client privilege.  Kobach argues that his relationship with Senator Pearce is entirely independent of, and distinct from, that between FAIR/IRLI and Senator Pearce, and disagrees with the characterization of his communications with Pearce as "policy advice."  He has submitted a privilege log.

## II.    Legal Standard

Fed. R. Civ. P. 45, which governs the use of subpoenas, was significantly amended effective December 1, 2013, to explicitly permit the transfer of subpoena-related motions from the court where compliance is required to the court that issued the subpoena.[6]  Rule 45(f) states, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."[7]  The Advisory Committee Notes provide the following guidance as to when transfer is appropriate:

> In the absence of consent, the court may transfer in exceptional
> circumstances, and the proponent of transfer bears the burden of

---

[6]*See* Fed. R. Civ. P. 45(f) and Advisory Committee Notes (2013).

[7]Fed. R. Civ. P. 45(f).

> showing that such circumstances are present.  The prime concern
> should be avoiding burdens on local nonparties subject to
> subpoenas, and it should not be assumed that the issuing court is in
> a superior position to resolve subpoena-related motions.  In some
> circumstances, however, transfer may be warranted in order to
> avoid disrupting the issuing court's management of the underlying
> litigation, as when that court has already ruled on issues presented
> by the motion or the same issues are likely to arise in discovery in
> many districts.  Transfer is appropriate only if such interests
> outweigh the interests of the nonparty served with the subpoena in
> obtaining local resolution of the motion. Judges in compliance
> districts may find it helpful to consult with the judge in the issuing
> court presiding over the underlying case while addressing the
> subpoena-related motions.[8]

The Advisory Comments also offer guidance as to how to minimize the burden on non-

parties:

> If the motion is transferred, judges are encouraged to permit
> telecommunications methods to minimize the burden a transfer
> imposes on nonparties, if it is necessary for attorneys admitted in
> the court where the motion is made to appear in the court in which
> the action is pending.  The rule provides that if these attorneys are
> authorized to practice in the court where the motion is made, they
> may file papers and appear in the court in which the action is
> pending in relation to the motion as officers of that court. . . .[9]

 As the Advisory Comments make clear, the question before the Court on the motion to

transfer involves a balancing test—whether the circumstances favoring transfer outweigh the

interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

## III.    Discussion

Because Kobach does not consent to transfer of the motion to compel to the District of

Arizona, the Court may only transfer the motion upon a finding of exceptional circumstances.

---

[8]*Id.*

[9]*Id.*

5

Thus, the Court analyzes the question using the balancing test set forth above.

A.    **Exceptional Circumstances**

The Advisory Committee to Rule 45(f) identified two particular circumstances that would warrant transfer: when the issuing court "has already ruled on issues presented by the motion," and when "the same issues are likely to arise in discovery in many districts."[10]  Petitioners assert that both such circumstances are present in this case, and urge that transfer of their Motion to Compel is warranted here to avoid disrupting the Arizona District Court's management of the underlying case and to ensure avoidance of inconsistent discovery rulings in that case.  The Court agrees.

First, the issues of attorney-client privilege and scope raised by Kobach are intertwined with issues already decided by Judge Bolton in connection with FAIR and IRLI's motion to quash similar subpoenas and their subsequent motion to reconsider.  In denying FAIR and IRLI's motion to quash, Judge Bolton ruled that those organizations were offering policy, not legal, advice to Senator Pearce, and that they were lobbying Arizona legislators during the process of formulating and enacting S.B. 1070.

Kobach argues that the issues surrounding his subpoenas are different than those decided by Judge Bolton.  Kobach attests that he and Senator Pearce have had an attorney-client relationship since 2006, that has no relationship to the contract work Kobach did on various other cases for FAIR and IRLI.[11]  Senator Pearce also attests that he sought legal advice from Kobach, who he regarded as "the foremost legal authority in the United States on the subject of

---

[10]*Id.*

[11]Doc. 11, Ex. B.

federal preemption.  I wanted him to provide legal advice in anticipation of that litigation

[challenging S.B. 1070], so that my proposed bills would survive any legal challenge."[12]  By

contrast, Pearce did not file such an affidavit in Arizona stating that he had an attorney-client

relationship with FAIR or IRLI.  Kobach argues that Petitioners attempt to mislead this Court by

suggesting the attorney-client relationship between Kobach and Pearce has been addressed by

Judge Bolton.

However, Kobach does not attempt to distinguish the generally applicable legal issues

decided by Judge Bolton, but only the specific factual circumstances.  Even accepting as true

Kobach's contentions about how he is different from FAIR and IRLI does not detract from what

matters in the context of the motion to transfer: that Judge Bolton previously ruled that advice

and counsel to Senator Pearce about how to draft legislation, even when given by lawyers, is

policy, rather than legal advice, and therefore ineligible for the privilege.  Both Kobach and

Senator Pearce aver that Kobach was advising Pearce on how to draft immigration-related

legislation so that it would pass Constitutional muster.  Thus, Kobach cannot maintain that Judge

Bolton has not previously ruled on issues very similar to those presented by the Motion to

Compel that Petitioners seek to transfer.  Moreover, even assuming that Kobach had an attorney-

client relationship with Senator Pearce, he must still establish the privileged nature of the

communication, which Judge Bolton has likewise addressed.[13]  Petitioners' claim that Kobach

either lobbied the Arizona legislature to pass S.B. 1070 or provided policy advice to Senator

Pearce regarding S.B. 1070, mirrors the issues previously before the Arizona District Court.

---

[12]*Id.*, Ex. A.

[13]Ex. Q at 2–3.

Further, Kobach's objections to the subpoenas are similar to objections addressed in motions to compel that recently have been filed in the District of Arizona and the District of Columbia.  Petitioners filed a Motion to Compel Senator Pearce to produce documents and communications related to S.B. 1070 in *Whiting*, No. 10-cv-01061 (D. Ariz. June 24, 2014), and to similarly compel Judicial Watch in *Judicial Watch, Inc. v. Valle del Sol*, No. 14-mc-538 (D.D.C. June 7, 2014); Judicial Watch, which served as counsel to Senator Pearce and the Arizona State Legislature, has also filed a Motion to Quash.  Like Kobach, both Senator Pearce and Judicial Watch have asserted attorney-client privilege and relevance objections, and Petitioners are also seeking to have the Judicial Watch motion to compel transferred from the District of Columbia to the District of Arizona, for Judge Bolton to consider in the underlying *Whiting* case.  The Court has reviewed the filings in those cases, and notes that the question of attorney-client privilege between Judicial Watch and Senator Pearce is at the heart of the dispute over the motion to transfer in those proceedings.  Thus, identical issues have arisen in discovery in multiple districts, with the possibility that multiple courts will issue varying, and potentially inconsistent rulings, weighing heavily in favor of transfer.

Based on these considerations, the Court concludes that Judge Bolton's prior decisions denying the FAIR/IRLI motion to quash, as well as the pending motions to compel Senator Pearce and Judicial Watch in multiple states present a danger of inconsistent rulings and would risk disrupting the District of Arizona's management of the underlying litigation.  Moreover, the District of Arizona is in a better position to rule on this motion due to its familiarity with the issues involved.  The issue of attorney client privilege between Senator Pearce and Kobach in connection with S.B. 1070, as well as between Senator Pearce and Judicial Watch, is clearly

intertwined with the issue previously considered by Judge Bolton on the FAIR/IRLI subpoenas.

Accordingly, the Court finds that exceptional circumstances exist that warrant transfer under

Rule 45(f).

**B.      Burden to Kobach**

The Court proceeds to balance the exceptional circumstances outlined above against the

burden that transfer would impose on Kobach.  Kobach identifies several burdens that transfer

might impose,  which he contends are heightened by the fact that he currently serves as Secretary

of State.  First, Kobach argues that a transfer would require him to find and retain local counsel

or familiarize himself with the local rules of the District of Arizona.  The Motion to Compel is

fully briefed, however, and Judge Bolton has confirmed that she resolves third-party subpoena

motions on the briefing papers alone.  If oral argument is granted, Judge Bolton allows out-of-

state counsel to appear by telephone, and Rule 45(f) expressly states that post-transfer, local

counsel is not necessary.[14]

Kobach's second claim of burden is that if an *in camera* review of documents is

necessary, such a review would be far less burdensome in the District of Kansas than in Arizona

because "scanning or converting into pdf format the dozens of pages comprising the privileged

communications and undertaking the process of submitting them under seal would be far more

time consuming than simply dropping them off at the local courthouse."  As Petitioners point

out, there is no burdensome scanning process as Kobach has already stated that all the relevant

documents are in electronic form.  Moreover, Kobach has also represented to Petitioners that it is

---

[14]Fed. R. Civ. P. 45(f) (stating, "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court.").

less burdensome for him to mail responsive records than to drop them off in downtown Kansas City; thus, if Judge Bolton requires *in camera* review, there is no reason why Kobach could not send the documents to the District of Arizona via certified mail.

Kobach next argues that any factual determination resolving his attorney-client privilege claim may require testimony from witnesses, which would require him to travel to Arizona. Kobach does not identify any disputed facts, however, and the only factual matter Petitioners believe might require further development are those related to Senator Pearce's apparent waiver of all privilege claims when he produced to Petitioners' counsel, under Arizona's Public Records Act ("PRA"), some 25,000 documents, including a number of emails with Kobach. Petitioners assert that Senator Pearce has suggested that attorneys for the Arizona State Legislature responsible for responding to the PRA requests on his behalf violated his express wishes in releasing his communications with Kobach, and suggest that Senator Pearce is being less than truthful or omitting a number of facts. But, all of the witnesses for any such hearing reside or work in Phoenix, and this Court could not compel those witness's attendance at any hearing necessary to resolve the privilege claim. Moreover, Petitioners assert that Kobach has no relevant knowledge on this issue, and would not be compelled to testify.

Finally, Kobach claims that he is a high-ranking government official of the State of Kansas and cites to cases suggesting that as such, he should be entitled to "special protections" from the courts.[15] Kobach also notes that the timing of Petitioner's motion is of concern, as Kobach in his official capacity is currently a party and attorney opposing Valle del Sol in

---

[15]*See Alliance for Global Justice v. Dist. of Columbia*, No. 01-00811-PLF, 2005 WL 1799553, at *2 (D. D.C. July 29, 2005) ("Courts have carved out this special rule for high ranking government officials because, if they did not, . . . heads of government departments . . . would be spending their time giving depositions and would have no opportunity to perform their functions.").

*Kobach, et al. v. Election Assistance Commission, et al.*, which has been appealed to the Tenth

Circuit Court of Appeals, and set for oral argument on August 25, 2014.[16]  As Petitioners point

out, however, the protections cited by Kobach are afforded to high-ranking government officials

whom parties seek to depose about their government duties.[17]  "The rationale behind prohibiting

the depositions of 'high-ranking officials' is to allow high-level public servants to spend their

valuable time performing their duties rather than preparing for and testifying in depositions,

unless the person has some relevant personal knowledge about the subject matter."[18]  Here,

Petitioners do not seek to depose Kobach, nor do they seek information regarding his duties as

Secretary of State.  Instead, they seek to enforce subpoenas *duces tecum* served on Kobach in

connection with activities he voluntarily undertakes as part of his "part-time law practice."

Moreover, the doctrine  Kobach cites has no application when the office has some personal

knowledge about the matter and the party seeking the information makes a showing that the

information cannot be obtained elsewhere.[19]  Kobach has spoken publicly of his heavy

involvement in the drafting and passage of S.B. 1070, and Senator Pearce has not produced these

documents nor listed them in a privilege log, so it appears Kobach retains the only copies.  Thus,

the Court agrees with Petitioners that Kobach should not be able use his official title to avoid

---

[16]—F. Supp. 2d—, 2014 WL 1094957 (D. Kan. Mar. 19, 2014) (action brought by States of Kansas and Arizona and their secretaries of state against United States Election Assistance Commission seeking writ of mandamus to order defendants to require voter applicants to submit proof-of-citizenship documents in accordance with state law).

[17]*See, e.g., Byrd v. Dist. of Columbia*, 259 F.R.D. 1, at *7–8 (D.D.C. 2009) (denying protective order and motion to quash notice of deposition of government officials); *Alliance for Global Justice*,  2005 WL 1799553, at *2 ("If the Mayor was subject to constant deposition regarding his duties as Mayor, his ability to perform his functions would be severely impaired.").

[18]*Kline v. Berry*, No. 10-1802 (RWR) (AK), 2012 WL 2376982, at *4 (D.D.C. June 25, 2012) (citing *Byrd*, 259 F.R.D. at 7).

[19]*Id.*

compliance with subpoenas *duces tecum* concerning a matter that is the focus of his part-time law practice, and unrelated to his duties as Secretary of State.[20]

      Based on these considerations, the Court finds that any burden to Kobach imposed by a transfer to the District of Arizona is outweighed by the importance of ensuring consistency in rulings on the issues involved, preserving judicial economy, and permitting the court with the most experience and knowledge of the facts and issues to rule on these matters.  Accordingly, Petitioners have demonstrated exceptional circumstances, and their Motion to Transfer the Motion to Compel to the District of Arizona is granted.

      **IT IS THEREFORE ORDERED BY THE COURT** that Petitioners' Motion to Transfer (Doc. 3) is GRANTED; the Clerk of the court is directed to transfer this case to the United States District Court for the District of Arizona for consideration of Petitioners' Motion to Compel in connection with the underlying litigation, *Valle del Sol v. Whiting*, No. 10-cv-01061-SRB.

      **IT IS SO ORDERED.**

Dated: August 4, 2014

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  UNITED STATES DISTRICT JUDGE

---

[20]In so ruling, the Court notes that Kobach has not moved for a protective order and does not raise this argument in his response to Petitioners' Motion to Compel.  *See* Doc. 14.